1
2
3
4
5
6
7
8
9
10
11
12

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES DRIMMER, on behalf of himself and others similarly situated,<br><br>                                 Plaintiff,<br>    v.<br><br>WD-40 COMPANY,<br><br><br>                                Defendant. | CASE NO. 06-CV-900 W (AJB)<br><br><br>**ORDER DENYING MOTION TO CERTIFY CLASS** |

On April 18, 2006, Plaintiff James Drimmer filed a class-action complaint alleging negligence, breach of warranty, and claims under various California consumer-protection statutes. Having survived a motion to dismiss, Drimmer filed an amended complaint and now moves to certify two classes under Rule 23(b)(2) and (3). Because Drimmer has not met his burden, the court will **DENY** the motion.

06cv900

## I.    Background & Legal Standards

Drimmer's amended complaint describes two products he bought in November and December 2005: "2000 Flushes Automatic Bowl Cleaner" and "2000 Flushes Blue Plus Bleach."  WD-40 designs, manufactures, and sells these small, boxed tablets, and as their names imply, they are supposed to clean and disinfect toilet bowls as they slowly dissolve.  But they contain chlorine bleach (technically, dichlorohydantoin), and because they sit in the toilet *tank* rather than the *bowl*, the bleach allegedly corrodes the tank parts.  After only a few months of using the 2000 Flushes products, Drimmer's toilet began to "'run' continuously," and his plumber informed him that the tablets were "horrible" for toilets. (Compl. ¶¶ 20–22.) WD-40 claims the products are "safe" for and "not harmful" to plumbing and septic tanks on its packaging.

Federal Rule of Civil Procedure 23(a) establishes four prerequisites for certifying a class:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The putative class representative bears the burden of establishing each element. <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992).  "[P]otential class members must also demonstrate that they meet at least one of the alternative requirements under Rule 23(b)."  <u>Walters v. Reno</u>, 145 F.3d 1032, 1045 (9th Cir. 1998).

Rule 23(b)(2) permits a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief."  Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action [be] superior to other available methods for fair and efficient adjudication of the controversy."

1    District courts have "broad power and discretion" over class certifications. <u>Reiter</u>
2 <u>v. Sonotone Corp.</u>, 442 U.S. 330, 345 (1979); <u>Doninger v. Pac. N.W. Bell, Inc.</u>, 564
3 F.2d 1304, 1308 (9th Cir. 1977) ("The judgment of the trial court should be given the
4 greatest respect and the broadest discretion, particularly if . . . he has canvassed the
5 factual aspects of the litigation."); <u>see also</u> <u>Armstrong v. Davis</u>, 275 F.3d 849, 869 (9th
6 Cir. 2001).  In evaluating whether a plaintiff has met his burden, a court should accept
7 the substantive allegations of the complaint as true.  <u>Blackie v. Barrack</u>, 524 F.2d 891,
8 901 n. 17 (9th Cir. 1975).   A court need not reach the merits of the action in
9 considering a class-certification motion, <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 179
10 (1974), but may consider evidence even if that evidence also relates to the merits,
11 <u>Hanon</u> 976 F.2d at 509.

12

13 **II.    <u>Discussion</u>**

14    Drimmer seeks to certify two classes: (i) a nationwide class of consumers who
15 bought the 2000 Flushes products on or after April 18, 2002, and (ii) a California class
16 who bought the 2000 Flushes products on or after April 18, 2002 (for a Song-Beverly
17 warranty claim).  Drimmer argues that because the WD-40 products were not "safe for
18 plumbing," as WD-40 uniformly claimed, the case turns on "one overriding common
19 predominating issue: Do [WD-40]'s tablets harm toilets even when used as directed?"
20 (Pl.'s Mem. in Supp. of Mot. for Class Certification at 2.)  WD-40 responds, in essence,
21 that there is far more to this case than that.  The court agrees, and will explain further.

22

23 **A.    Drimmer's proposed class does not present common questions of law or fact.**
24    Drimmer argues that the common label and harmful active ingredient in the 2000
25 Flushes products unites the class.  But Drimmer never addresses the wealth of case law
26 suggesting that similar or identical representations in negligence and products-liability
27 cases do not alone provide the common factual basis Rule 23(a)(2) requires.  <u>See, e.g.</u>,
28 <u>Ikonen v. Hartz Mountain Corp.</u>, 122 F.R.D. 258, 262 (S.D. Cal. 1988).

Undoubtedly, the putative class adjudication would present one common issue: whether the Flushes products create a risk of harm to toilet-tank parts. But negligence law requires more than an increased risk of harm—it requires that WD-40's design or testing constitute a substantial factor in an actual, concrete harm to each of the class members. Mere *purchase* of the Flushes product does not guarantee *use*, let alone *harm*. As WD-40 correctly points out, unique questions—relating to the frequency of product use, condition of the toilet and tank parts, and level of chlorine in the water, just to name a few—will inevitably arise and overshadow the few common elements of a claim. (Def.'s Mem. in Opp'n to Mot. for Class Certification at 2–3; McGuire Decl. ¶¶ 9–10; Reitman Decl. ¶¶ 10, 14.)

Drimmer's reliance on the common packaging (with "uniform material misrepresentations") muddies the legal context to dodge these frequently thorny issues. (Pl.'s Mem. at 12.) Class actions in negligence, unlike in fraud, require careful attention to much more than a unifying material misstatement. Drimmer argues in response that a "single common issue that is central to the case" (Pl.'s Mem. in Reply at 2) suffices. See Celano v. Marriott Int'l, Inc., 242 F.R.D. 544, 551 (N.D. Cal. 2007). But Drimmer never explains *why* the design and packaging—rather than the use and resulting harm— constitute the "central" issue. See id.

Likewise, in warranty and unfair-competition suits, the court must evaluate far more than the truth of the packaging. Granted, these theories depend less on individual circumstances than the negligence theories. However—as the Ninth Circuit Court of Appeals wisely stated—"problems of commonality merge into problems of management [under Rule 23(a)(3)(D)]." In re Dalkon' Shield Prods. Liab. Litig., 693 F.2d 847, 854 (9th Cir. 1982). The court will consider the management problems further below. Suffice it to say, though, that everyone who purchased a 2000 Flushes product on or after April 18, 2002, did not *ipso facto* suffer injury. Even assuming the 2000 Flushes products were not generally "safe for plumbing," Drimmer must show causation (reliance), an important, if not central, issue.

**B.     Drimmer inadequately represents the class.**

Drimmer cannot simultaneously represent injured and uninjured class members. In an apparent attempt to limit unique questions of fact, Drimmer seeks only the purchase price and an injunction prohibiting the language on the Flush packaging.[1] But Drimmer cannot plausibly claim that every class member would forfeit damages from replacing the tank parts, paying higher water bills, or even hiring a plumber to find the leak (as Drimmer did). "A class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class." See, e.g., Thompson v. Am. Tobacco Co., 189 F.R.D. 544, 550 (D. Minn. 1999) (holding class representatives who waived personal-injury damages and sought only a medical monitoring program inadequate). Drimmer cannot maintain a class action without seeking all available remedies for the class members, yet he refuses to seek all available remedies even for himself. Accordingly, Drimmer's own conduct militates against finding that he adequately represents the class. Assuming for the sake of argument that res judicata would not bar the class members from obtaining further relief (Pl.'s Mem. in Reply at 4), the court cannot ignore the inference that Drimmer holds different priorities and litigation incentives than a typical class member.

Further, Drimmer knows the putative class counsel very well, and currently lives with him. (Drimmer Dep. at 6, 9, 12, 16–17.) Courts routinely refuse to certify a class when a conflict of interest between the class and the class representative arises. See Jaroslawicz v. Safety Kleen Corp., 151 F.R.D. 324, 328–29 (N.D. Ill. 1993) ("[C]ourts fear that a class representative who is closely associated with the class attorney would allow settlement on terms less favorable to the interests of absent class members.") Here, Drimmer, an attorney himself, is as familiar with the putative class attorney as he is *unfamiliar* with the particulars of this case. Even were the court to give Drimmer the benefit of any doubt regarding a quid pro quo, the appearance of impropriety remains.

---

[1] Drimmer never requested an injunction in his amended complaint. The court will assume Drimmer can and will remedy this oversight.

While any one factor would not disqualify Drimmer, the combination of a personal relationship, landlord-tenant relationship, and an inexplicable disinterest in pursuing all remedies available to him strongly suggest that he may direct the litigation to benefit his friend rather than his fellow class members.  See id.  Accordingly, Drimmer has not met his burden to show that he will adequately represent the class.

**C.    Individual questions predominate over common questions.**

Even assuming Drimmer had met his burden under Rule 23(a), he has not met either prong of Rule 23(b).  Again, to prevail on a negligence claim, Drimmer cannot merely prove that (a) he bought 2000 Flushes, an "unsafe" product, or (b) he bought 2000 Flushes, and his toilet started leaking.  Rather, he must prove that the 2000 Flushes product was a substantial factor in the damage to his toilet. So must every other class member.

Thus, the putative class action presents a relatively straightforward issue (whether WD-40 negligently tested or designed the Flushes products) and a more complex issue (whether the Flushes products were more likely than not a cause of damage to toilet-tank parts).  But the toilet-tank parts operate under a myriad of circumstances.  Some flush every hour, some once per week.  Some flush highly chlorinated water, some do not.  Some parts are old, some new; some are rubber, some plastic; some are expensive, some cheap.  In other words, individual factual and legal issues—that will determine whether the class member even has a claim—predominate over common ones. Drimmer's attempt to "demonstrate through evidence common to the [c]lass that even when you control for all these potential variables, WD-40's Products damage tank parts and accelerate their failure date" (Pl.'s Mem. in Reply at 6) equates *risk* with *liability*. WD-40 does not become liable for the simple potential for harm, only for *actual* and *proximate* harm.  Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 488–89 (Mass. 2004), a false-advertising case involving statutory damages for untrue statements on packaging, does not apply to the negligence analysis.

Granted, the warranty and unfair-competition classes present closer questions on predominance. Reliance, for example, may not require "individualized proof of deception," but merely conduct "likely to deceive consumers." Mass. Mut. Life Ins. Co. v. Sup. Ct., 97 Cal. App. 4th 1282, 1289 (2002); see Fletcher v. Sec. Pac. Nat'l Bank, 23 Cal. 3d 442, 452–53 (1979). Much of the case, then, turns on whether a reasonable consumer (not the class members themselves) would find the statements "safe for plumbing" and "not harmful to plumbing" material. See id. On the other hand, Fletcher and its progeny interpret pleading standards, not class-certification standards. In Negrete v. Allianz Life Ins. Co., 238 F.R.D. 482, 491 (C.D. Cal. 2006), on a motion for class certification, the court still looked for a means of "generalized proof that . . . would give rise to a common sense inference that no rational class member would purchase [the products] upon adequate disclosure of the facts, *regardless of their individual circumstances*." Without a means of generalized proof, individual questions would predominate. Drimmer's proof amounts to repeating his claim that the 2000 Flushes products inevitably destroy toilet-tank parts—and thus no rational consumer would buy them. Unlike the overpriced annuities in Negrete, however, rational buyers might choose accelerated wear on the toilet-tank parts (along with cleanliness and a pleasant scent) over other market alternatives. Without more, the court cannot say that Drimmer has met his burden.

Drimmer's strongest case for certification lies in the California warranty claim. But the court hesitates to certify even this class. Drimmer devotes precious few of his arguments to the warranty claim; it suffices to say that he believes the products harm toilet-tank parts and are therefore unfit or unmerchantable. But he entirely ignores when the implied warranty expires: one year from the date of purchase. In Drimmer's own experience, it took five months before the Flushes products adversely affected his toilet. Without a more convincing basis to conclude that the common question predominates over each class member's experience with 2000 Flushes, the court cannot certify the class under Rule 23(b)(3).

**D.    Other means of adjudication are superior to a nationwide class action.**

Drimmer has utterly failed to meet his burden to explain how the court would manage a nationwide class action of this scope.  Drimmer asserts that the Flush products *will* cause damage, and liability only depends on its extent.  But the court has already discussed the fatal defects in that argument, and will not repeat them here.  The myriad factual issues and geographic scope of the putative class action compound the court's burden in coordinating it.

Drimmer relies on the common-sense principle that a class action best serves consumers who have little incentive to litigate claims individually.  (Pl.'s Mem. at 23.)  He quotes a disgruntled consumer who complained that "in the grand scheme of things this is a tiny little problem that cost less than $200" (id.), yet fails to apprehend that his putative class would be *ineligible to recover more than the few dollars they spent on the product.*  Only by stripping the class of the most potent weapon—and the likely source of their frustration—does the case resemble a viable class action.  But that is precisely why a class action would not be superior to WD-40's internal system, small-claims adjudication, or even parallel statewide class actions: Manageability cannot come at the cost of fairness to the class members.

Finally, under <u>Zinser v. Accufix Research Institute, Inc.</u>, 253 F.3d 1180, 1190 (9th Cir. 2001), a nationwide class action would promote neither efficiency nor economy. Concentrating any litigation involving three dollars in a forum at least several hundred miles from over 80% of the putative class members is highly inefficient. Directing discovery and claims administration from one forum would introduce significant delay.  Most important, a nationwide class action centered in San Diego would diminish the class members' already weak incentive to litigate.  Thus, the court cannot conclude that a class action is superior to other forms of adjudication.  Again, this poses an insurmountable bar to certification under Rule 23(b)(3).

//

//

**E.   Drimmer primarily seeks monetary relief, not an injunction.**

To certify a class under Rule 23(b)(2), Drimmer must show that injunctive or declaratory relief is appropriate for the class as a whole.  In its current form, the complaint never requests such relief, though Drimmer does argue for certification on the assumption it does.  But injunctive or declaratory relief makes little sense here.  The class members, by definition, already purchased the products, whereas an injunction prohibiting the allegedly false statements can only benefit *future* purchasers.  Thus, injunctive relief, even had it been pleaded, is probably inappropriate.

Further, under <u>Zinser</u>, the court cannot certify a class under Rule 23(b)(2) unless injunctive or declaratory relief is the primary claim in the action.  <u>See</u> <u>Zinser</u>, 253 F.3d at 1198.  Because class members who have already suffered damages from the 2000 Flushes products—including Drimmer himself—have nothing to gain from injunctive relief, the court concludes that this case is primarily for damages.  Drimmer cannot make an end-run around Rule 23(b)(3) by tacking on a request for an injunction.

**F.   Together, these flaws weigh against exercising discretion in Drimmer's favor.**

While no single element of Drimmer's argument entirely lacks merit, Rule 23 places the burden on the class representative to demonstrate all elements, not the opponent to disprove them.  Further, Rule 23 directs the court to exercise its discretion with due regard for the principles of fairness and efficiency.  <u>See</u> <u>Doninger</u>, 564 F.2d at 1309.  Having considered the facts and legal theories in this case, the court remains unconvinced that a nationwide class action over a trivial purchase price serves the interests of fairness or efficiency better than the alternatives.  Even erring on the side of certification, as some courts suggest, undercuts a policy justification for class actions because this class leaves the most motivated consumers who suffered the worst harm on their own.  <u>See</u> <u>Ikonen</u>, 122 F.R.D. at 266.

Drimmer attaches several customer complaints (Pl.'s Mem. Ex. 5–7) providing uncontroverted evidence that repair costs—not the purchase price—are a significant,

if not the sole, reason consumers take action against WD-40. Yet Drimmer would lead the class members through an undoubtedly lengthy litigation process, only to leave them on their own to pursue damages of any consequence. The court cannot conceive how that class definition yields a fairer or a more efficient use of judicial resources than either (a) a class encompassing a smaller geographic scope, or (b) a class sharing a greater type of harm. Further, with evidence that WD-40's internal process has worked for at least some purchasers (even those with extensive consequential damages), the court hesitates to devote resources to a class action that could spawn a second round of litigation (for the same type of consequential damages).

In short, the fundamental flaw in Drimmer's argument—that all consumers necessarily suffered harm because they purchased a product unsafe for toilet tanks—infects several necessary elements of class certification. Having challenged that assumption with affidavits, WD-40 persuasively shows that unique questions will overshadow common ones. In addition, Drimmer's conflict of interest and refusal to seek all available remedies renders him a poor candidate to serve as class representative. Finally, a class action will not likely be a fair, efficient, or superior method of adjudication. Therefore, the court will exercise its discretion to **DENY** Drimmer's motion for class certification in all respects.

III.   <u>Conclusion</u>

For the foregoing reasons, the court hereby **DENIES** Drimmer's motion to certify a class under Federal Rule 23(b)(2) and (3).

   **IT IS SO ORDERED.**

DATED:  August 24, 2007

Hon. Thomas J. Whelan
United States District Judge

-10-

06cv900